IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 17-16-BLG-SPW-TJC |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| RICHARD DEAN MILLER, | |
| Defendant. | |

Defendant Richard Dean Miller ("Miller") is charged with Conspiracy to Possess with Intent to Distribute Methamphetamine and Possession with Intent to Distribute Methamphetamine.  (Doc. 1.)  He has moved to suppress evidence under the Fourth Amendment.  (Doc. 33.)

On July 26, 2018, Judge Watters referred Miller's motion to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 59(a), Fed. R. Crim. P., for the purposes of conducting a hearing and issuing appropriate findings and recommendations.  (Doc. 38.)

 Miller asserts that the evidence obtained as a result of a search of a backpack located in a hotel room closet should be suppressed because: (1) he had a

reasonable expectation of privacy in the hotel room and backpack; (2) the search was not a lawful consent search; and (3) the backpack was not abandoned property.

The Court held an evidentiary hearing on August 10, 2018, and the parties presented evidence on the motion.  Having considered the parties' arguments and submissions, the Court **RECOMMENDS** that Miller's Motion to Suppress be **GRANTED**.

I.    **BACKGROUND**

The Court heard testimony from Billings Police Department Officers Seth Foster ("Officer Foster") and Caleb Schultz ("Officer Schultz").  The following facts are taken from the hearing testimony, the exhibits admitted into evidence at the hearing, and the exhibits attached to Miller's brief.[1]

On December 25, 2016, staff at the Lexington Inn contacted the Billings Police Department to report "suspicious activity of three individuals."  (Doc. 34-1 at 3.)  One of the individuals was a male who was asking a locksmith to unlock a vehicle in the hotel's parking lot.  *Id.*  Hotel staff was concerned the vehicle may have been stolen because the man gave the locksmith two different names, and the locksmith refused service.  *Id.*  The hotel employee told the 911 dispatcher that the man and a woman were in Room 119, and that she suspected the individuals were

---

[1]  Defendant attached as an exhibit certain law enforcement reports produced in discovery as USAO 348-354 and 447-448.  (Doc. 34-1.)

using drugs.[2]  She stated the room was registered to Carla Saunders ("Saunders"). She also gave dispatch a description of the individuals.

Billings Police Department Officers Foster, Schultz and Lehman responded to the call.  The CAD Narrative[3] provided the officers with a physical description of the suspect individuals.  The first suspect was identified as Saunders, a white female, mid-20's, slender with long dark brown hair, wearing patterned leggings and a jacket.  A second suspect was identified as a white male, mid-30's, heavy, with dark gray hair and a beard, wearing a black jacket and jeans, and "carrying a backpack."

Officer Foster testified that after he arrived at the hotel, he determined the vehicle was not stolen and he did not see anyone in the parking lot.  He then spoke with the front desk clerk.  Officer Foster testified the clerk told him the individuals were staying in Room 119, and the room was registered to Saunders.  Officer Foster determined Saunders had outstanding warrants and a history of drug involvement.

The officers proceeded to Room 119.  Saunders opened the door, and Officer Foster asked her to step into the hallway.  Officer Foster advised her that she had warrants, but he was not going to arrest her because it was Christmas.  He

---

[2] The recording of the 911 call was admitted as Defendant's Exhibit B.
[3] *See* Defendant's Exhibit A.

3

asked her if there was anything illegal in the room, and she responded "there might be." Ultimately, Saunders consented to a search of the room.

Saunders and another male were the only occupants of the room at that time. The male was identified as Bryan Stolzenberg ("Stolzenberg"). Officer Schultz testified that Stolzenberg stated that he was there hanging out with his friends. He did not indicate he was staying in the room. Officer Schultz also testified that Stolzenberg did not match the description of the male provided in the CAD Narratives who was carrying a backpack.

The officers searched the room. Foster asked Saunders and Stolzenberg if any "stuff" in a closet in the room was theirs. They both indicated no. Officer Foster searched the closet and located a black backpack. Officer Foster testified that he then asked Saunders if the backpack belonged to her.[4] Officer Foster stated

---

[4] Based on the audio from Officer Foster's Watchguard video and audio recording, it appears Officer Foster had already began searching the backpack *before* he specifically asked Saunders if the backpack belonged to her. After Officer Foster asked Saunders and Stolzenberg if anything in the closet belonged to them, shuffling is heard for approximately 30 seconds. Gov't Exhibit 1 at 8:34-9:01. Then Officer Foster remarked "we got some meth." *Id.* at 9:02. A few seconds later, he states "Is this black bag…this black backpack isn't yours Carla?...okay, the one with the dope in it?" *Id.* at 9:12-9:17. His statement that "we got some meth," followed by his reference to "dope" in the bag, strongly suggests that he had already searched the backpack before asking Saunders if she owned it. This is not a finding that Officer Foster lacked credibility. Officer Foster candidly acknowledged on more than one occasion that this event occurred over a year and one-half before his testimony, and that the audio recording would be the best evidence of what took place.

she denied ownership, and the audio recording of the interaction appears to confirm this.  He testified that neither Saunders nor Stolzenberg indicated who the backpack belonged to.

Officer Foster testified he considered the backpack abandoned or found property at that point because both of the occupants of the room said it was not theirs.  Officer Foster further testified that he believed he had authority to search the backpack because Saunders consented to the search of the room.

Officer Foster testified that he then searched the backpack and found marijuana, methamphetamine, and prescription bottles with the name Richard Miller.  Officer Foster asked Saunders and Stolzenberg who Miller was, and they denied knowing him.  Officer Foster seized the backpack, and left without arresting Saunders or Stolzenberg.  Officer Foster advised Saunders that the hotel staff may ask her to leave, but that he didn't know what they would decide to do.

The officers went back to the front desk and the hotel clerk pulled up video surveillance footage showing Miller with a black backpack.[5]  Miller is seen walking down a hallway with a woman (presumably Saunders) at approximately 4:30 a.m. on December 25, 2016.  Miller had a black backpack slung over his right arm.  He used a key and accessed the room.  Later, at approximately 9:11 a.m. and

---

[5] *See* Defendant's Exhibit C.

9:27 a.m., Miller is seen in the lobby of the hotel with a black backpack on his right shoulder.

The hotel clerk indicated she planned to ask the occupants in Room 119 to leave. The officers asked the hotel clerk to call again if the man in the surveillance video (Miller) returned to the hotel.

After leaving the hotel, Officer Foster took the backpack to evidence for tagging. Officer Foster testified he conducted a safety sweep of the bag and found a large amount of methamphetamine (approximately 1.5 pounds).[6]

At approximately 2:50 p.m., the hotel clerk called the police to report that the suspect (Miller) had returned and was wearing a wig. Officer Foster stated he did not respond to the call because the officers were off-duty at that point.

## II.   DISCUSSION

Miller argues the warrantless search of the backpack was unlawful because Saunders did not have actual or apparent authority to consent to the search, and the backpack was not abandoned property. The Government contends the search was lawful under either the consent exception to the warrant requirement, or under the abandoned property doctrine.

---

[6] It appears that Officer Foster may have already observed a large quantity of drugs during his initial search of the backpack. After leaving Room 119, Officer Foster can be heard stating "there's a ton of dope . . . this is his shop, this Miller guy." Gov't Exhibit 1 at 17:00-17:09. Again, this not a finding that Officer Foster lacked credibility for the reason stated above in note 4.

### A.    Consent Search

The Fourth Amendment protects persons against unreasonable searches and seizures.  U.S. Const. amend. IV.  Generally, a warrant based on probable cause is required for the search of a home or place of residence.  *Fernandez v. California*, 571 U.S. 292, 298 (2014).  "The Fourth Amendment protection against unreasonable searches and seizures is not limited to one's home, but also extends to such places as hotel or motel rooms."  *United States v. Cormier*, 220 F.3d 1103, 1108-09 (9th Cir. 2002).  The reasonable expectation of privacy in a hotel room extends to "one's person and one's things."  *United States v. Young*, 573 F.3d 711, 716 (9th Cir. 2009).

Warrantless searches are presumptively unlawful, unless they fall within a specific exception to the warrant requirement.  *United States v. Karo*, 468 U.S. 705, 717 (1984).  Consent is one of the established exceptions.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  "The existence of consent to a search is not lightly to be inferred and the government always bears the burden of proof to establish the existence of effective consent."  *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000).  The government may establish consent by showing a third party had either actual or apparent authority to consent to the search.  *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993).

/ / /

1.    <u>Standing</u>

At the hearing, the Government raised the issue of Miller's standing to challenge the search.  "In order to have standing to challenge the search of a hotel room under the Fourth Amendment, a defendant must establish a reasonable expectation of privacy in the room."  *United States v. Dorais*, 241 F.3d 1124, 1128 (9th Cir. 2001).  The Court finds Miller had a reasonable expectation of privacy in the hotel room.  Surveillance video shows Miller accessing the room with his own key.  In addition, neither Miller nor Saunder's occupancy of the room had been terminated at the time the police conducted the search.  *Compare United States v. Huffhines*, 967 F.2d 314 (9th Cir.1992) (holding a defendant has no reasonable expectation of privacy in a hotel room after the rental period has expired and the hotel has taken affirmative steps to repossess the room); *Young*, 716 F.3d at 716 (stating the defendant had a reasonable expectation of privacy in hotel room and the luggage he left in the room because hotel staff had not evicted him from the room).

Further, a person has an expectation of privacy in his private, closed containers, and he "does not forfeit that expectation of privacy merely because the container is located in a place that is not controlled exclusively by the container's owner."  *United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998).  "Closed packages or containers, such as [the defendant]'s backpack, 'are in the general

8

class of effects in which the public at large has a legitimate expectation of privacy,' making warrantless searches of them 'presumptively unreasonable." *Young*, 573 F.3d at 721 (citing *United States v. Jacobsen*, 466 U.S. 109, 114-15.)  There is no dispute the black backpack belonged to Miller.  Therefore, Miller had a reasonable expectation of privacy in the backpack.  Accordingly, the Court finds Miller has standing to challenge the legality of the search of the room and his backpack.

### 2.   Actual Authority to Consent

For the government to meet its burden to establish a third party's actual authority to consent, it must come forward with persuasive evidence that (1) the third party had "both shared use *and* joint access to or control over a searched area, which would demonstrate actual authority to consent," or (2) "the owner of the property to be searched has expressly authorized a third party to give consent to the search." *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993) (emphasis in original).

Here, Saunders could lawfully give consent to the search of the hotel room because she had joint access and use of it.  This is not disputed.  *See United States v. Dubrofsky*, 581 F.2d 208, 212 (9th Cir. 1978) (stating a party who has a key to the premises and access throughout, can give a valid consent search); *United States v. Matlock*, 415 U.S. 164, 170 (1974) ("The consent of one who possesses common

authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.")

The authority to consent to a search of a premises, however, does not "serve to forfeit the expectation of privacy in containers within that property." *Welch*, 4 F.3d at 764. *See United States v. Karo*, 468 U.S. 705, 725-26 (1984) (O'Connor, J., concurring) ("A homeowner's consent to a search of the home may not be effective consent to a search of a closed object inside the home. . . ."); *United States v. Waller*, 426 F.3d 838, (6th Cir. 2005) (holding third party's consent to search of an apartment did not extend to the defendant's closed luggage that he left stored in a bedroom closet in the apartment); *United States v. Salinas-Cano*, 959 F.2d 861, 863-65 (10th Cir. 1992) (consent of defendant's girlfriend to search suitcase was insufficient where she specifically denied ownership of it). Thus, Saunders' consent to the search of hotel room did not, standing alone, authorize the search of the backpack.

Therefore, the Government has the burden to show Saunders's consent to search the room extended to the backpack. It has not done so. Saunders disclaimed any ownership over the backpack. She told Officer Foster that nothing in the closet where the bag was found was hers. When Officer Foster asked her if

the backpack was hers, she said no.[7]  The Government, therefore, has not

established that Saunders had common authority over the backpack.  The

Government has also not presented any evidence Miller expressly authorized

Saunders to consent to the search.  Thus, the Court finds even though Saunders had

common authority over the room, she lacked actual authority to consent to the

search of the backpack.

3.   <u>Apparent Authority to Consent</u>

If the government cannot present proof of actual authority, it may establish

consent by way of the apparent authority doctrine.  *Welch*, 4 F.3d at 764.  A search

is valid under the apparent authority doctrine "if the government proves that the

officers who conducted it reasonably believed that the person from whom they

obtained consent had the actual authority to grant that consent."  *Id.*  "Apparent

authority is measured by an objective standard of reasonableness and requires an

examination of the actual consent as well as the surrounding circumstances.  Thus,

in assessing whether an officer's belief was objectively reasonable, the court

considers 'the facts available to the officer *at the moment*."  *United States v.*

*Arregun*, 735 F.3d 1168, 1175 (9th Cir. 2013) (internal citations omitted)

(emphasis in original).  The apparent authority doctrine validates a search "only

---

[7] As previously noted, it appears Officer Foster had already searched the backpack
by the time he specifically asked Saunders if the bag belonged to her.  *See infra,*
note 4.

where the search would be valid if the facts believed by the officer were true."
*Fultz*, 146 F.3d at 1106.  A mistaken belief as to the law, however, "does not
support the application of the apparent authority doctrine."  *Id.*

The Court finds the search cannot be upheld under the apparent authority
doctrine.  First, to the extent Officer Foster believed Saunder's consent to the
search of the hotel room applied to the backpack, he was mistaken as to the law.
*See Salinas-Cano*, 959 F.2d at 865 ("[O]wnership and control of property does not
automatically confer authority over containers within it").  Accordingly, his belief
is not sufficient to support the search under the apparent authority doctrine.  *See
Welch*, 4 F.3d at 765 ("A mistaken belief as to the law, no matter how reasonable,
is not sufficient"); *Fultz*, at 1106 (finding officer's belief that third party's consent
to search of a garage extended to the defendant's boxes stored in the garage was a
mistake of law, and the mistaken belief did not support the application of the
apparent authority doctrine).

Second, the Court finds the facts available to the officers at the time of the
search were insufficient to support a reasonable belief that Saunders had authority
to consent to the search of the backpack.  As discussed above, Saunders denied
ownership of the backpack, and did not otherwise indicate she had any authority to
consent to the search of the backpack.  Therefore, the officers could not have
reasonably believed that she had actual authority to grant consent.

12

In addition, the officers responded to the hotel to investigate the suspicious activity of three individuals associated with Room 119.  One of the suspects was identified as a white male, bearded, in his mid-30s, and carrying a backpack. When the officers made contact with the occupants of Room 119, there was no male matching that description.  A black backpack was found.  Even though neither Saunders nor Stolzenburg indicated who the backpack belonged to, the officers knew there was a suspect identified with the room who was reportedly seen carrying a backpack.  Thus, the facts would reasonably indicate there was a third person to whom the bag likely belonged.  The Court finds it is irrelevant whether the officers knew who Richard Miller was at the time.  It was enough that they knew they were looking for multiple suspects, one of whom was reportedly carrying a backpack, and that the two individuals they encountered in the room did not match his description.  By process of elimination, it should have been evident that the backpack belonged to the third suspect.

At best, the facts presented an ambiguous situation as to ownership of the backpack.  "The government cannot establish that its agents reasonably relied upon a third party's apparent authority 'if agents, faced with an ambiguous situation, nevertheless proceeded without making further inquiry.'"  *Waller*, 426 F.3d at 846. *See also Salinas-Cano*, 959 F.2d at 864 ("If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject

13

to 'mutual use' by the person giving consent, 'then warrantless entry is unlawful without further inquiry.'"); *U.S. v. Brown*, 2015 WL 3562558 *4 (D. Mont. June 4, 2015) (officers did not question party granting consent regarding mutual use of room to be searched).  Thus, because the officers proceeded without making further inquiry to establish Saunders' authority to grant a search of the backpack, the warrantless search of the backpack was unlawful.

### B.     Abandoned Property

At the hearing on this motion, the government presented a new, "alternative" theory supporting the lawfulness of the search.  Officer Foster testified he searched the backpack after making the determination it was abandoned property.  The Court permitted further briefing on the issue.

The Fourth Amendment does not protect abandoned property.  *Abel v. United States*, 362 U.S. 217, 241 (1960).  This is because the "abandonment by the owner or possessor of property ends his reasonable expectation of privacy." *United States v. Sledge*, 650 F.2d 1075, 1079-80 (9th Cir. 1981).  It is well settled that "(i)f a person has voluntarily abandoned property, he has no standing to complain of its search or seizure."  *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976).

Abandonment is a question of intent, and is measured by an objective standard.  *Jackson*, 544 F.2d at 409; *United States v. Kendall*, 655 F.2d 199, 201-

14

02 (9th Cir. 1981).  "The inquiry should focus on whether, through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure."  *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986).  The determination is based on the totality of the circumstances, and the objective facts available to law enforcement at the time the search is conducted.  *Id.*; *see also United States v. Camberos-Villapuda*, 832 F.3d 948, 952 (8th Cir. 2016).  Two important objective factors are "denial of ownership and physical relinquishment of the property."  *Nordling*, 804 F.2d at 1469.  Neither of those factors are present here.

Miller was not present during the search, and therefore, had no opportunity to either admit or deny ownership of the backpack.  As to relinquishment of the property, the Court does not find that a hotel room occupant who merely leaves a closed backpack in the closet of the room during the rental period has objectively demonstrated an intent to relinquish his interest in the bag.  *Young*, 573 F.3d at 716.  Further, based on the totality of the circumstances, the Court does not find that the officers could have reasonably believed the backpack was abandoned.

As previously discussed, the officers had knowledge that there were multiple occupants using the room, including a male suspect with a backpack.  The male they encountered in the room, did not match the description of the suspect with the backpack.  Thus, at that point, the facts objectively indicated the backpack

15

belonged to someone other than the two occupants of the room.  Saunders and Stolzenberg's denial of ownership of the backpack was not, therefore, sufficient to create an inference of abandonment.  The Government points out that Saunders and Stolzenberg also denied knowing who Richard Miller was.  As noted above, however, this fact is irrelevant because it occurred after the search took place.  Therefore, the agents could not have relied on that information in forming their belief about whether the bag was abandoned.

Based on the totality of the circumstances, the Court finds that Miller's act of leaving the backpack in the hotel room closet did not constitute objective evidence of an intent to abandon the property.  Further, in light of the facts known to the officers, the Court does not find a reasonable officer could have believed the backpack was abandoned property.

Accordingly, the Court finds the warrantless search of the backpack violated Miller's Fourth Amendment search and seizure rights.

## III.   <u>CONCLUSION</u>

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Miller's Motion to Suppress (Doc. 33) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

16

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after service hereof, or

objection is waived.

**IT IS ORDERED**.

DATED this 27th day of August, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge